1
2
3
4
5
6
7
8            **IN THE UNITED STATES DISTRICT COURT**
9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11
ART MADLAING,                               CASE NO. CV F 12-2069 LJO SMS
12
              Plaintiff,                     **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
13                                           **MOTION TO DISMISS**
     vs.                                     (Doc. 13.)
14
JPMORGAN CHASE BANK, N.A., et al.,
15
              Defendants.
16  _____/
17          **PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

18          Judges in the Eastern District of California carry the heaviest caseload in the nation, and this

19   Court is unable to devote inordinate time and resources to individual cases and matters.  This Court

20   cannot address all arguments, evidence and matters raised by parties and addresses only the arguments,

21   evidence and matters necessary to reach the decision in this order given the shortage of district judges

22   and staff.  The parties and counsel are encouraged to contact United States Senators Diane Feinstein and

23   Barbara Boxer to address this Court's inability to accommodate the parties and this action.

24                              **INTRODUCTION**

25          Defendants JPMorgan Chase Bank, N.A. ("Chase"), Wells Fargo Bank, N.A. ("Wells Fargo"),

26   and Mortgage Electronic Registration Systems, Inc. ("MERS") seek to dismiss as legally barred and

27   insufficiently pled plaintiff Art G. Madlaing's ("Mr. Madlaing's") claims arising from foreclosure of his

28   Clovis property ("property").  Mr. Madlaing responds that Chase, Wells Fargo and MERS (collectively

1  "defendants") lacked "legal power" to foreclose on the property to entitle Mr. Madlaing to pursue his

2  claims.  This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record without

3  a hearing.  *See* Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES this action

4  against defendants.

5  **BACKGROUND**

6  **Mr. Madlaing's Property Loan And Foreclosure**

7  On September 11, 2006, Mr. Madlaing obtained a $515,000 loan from Preferred Financial Group,

8  Inc. ("PFG") and which was secured by a Deed of Trust ("DOT") on the property.  The DOT identifies

9  PFG as lender, MERS as the lender's nominee, and First American Title Company ("First American")

10  as trustee.

11  On September 8, 2009, Quality Loan Service Corp. ("QLS"), as agent for the loan's beneficiary,

12  recorded a notice of default ("default notice").[1]  On October 20, 2009, QLS recorded a Substitution of

13  Trustee ("trustee substitution") to substitute as the new trustee under the DOT.  Wells Fargo signed the

14  trustee substitution.  On October 28, 2009, an Assignment of Deed of Trust ("DOT assignment") was

15  recorded to reflect assignment to Wells Fargo of all beneficial interest under the DOT.

16  On October 1, 2010, QLS recorded a notice of trustee's sale, but the sale did not proceed.  On

17  January 20, 2011, QLS recorded a second notice of trustee's sale to set a February 14, 2011 sale.  The

18  sale proceeded but was rescinded.

19  On April 5, 2011, QLS recorded another notice of trustee's sale but the sale has been postponed.

20  **Mr. Madlaing's Claims**

21  Mr. Madlaing's operative complaint ("complaint") accuses defendants of "wrongful, illegal, and

22  permanently damaging activities."  The complaint alleges claims for breach of contract, slander of title

23  and wrongful foreclosure.  The complaint alleges violation of California statutes, including California

24  Civil Code section 2923.5 and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200,

25  et seq.  The complaint further alleges claims under federal statutes, including the Real Estate Settlement

26  Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq., Truth in Lending Act ("TILA"), 15 U.S.C. §§

27  _____

28  [1]      Documents pertaining to Mr. Madlaing's loan, default and foreclosure were recorded with the Fresno County Recorder.

2

1601, et seq., and the Racketeer and Corrupt Practices Act ("RICO"), 18 U.S.C. §§ 1961, et seq.  The complaint's claims will be discussed below.

### DISCUSSION

#### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Defendants challenge the complaint's claims as legally barred and insufficiently plead.

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan*

3

*Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). A "court may consider evidence on which the complaint 'necessarily relies' if:

4

(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

Lastly, under F.R.Evid. 201, a court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986).

With these standards in mind, this Court turns defendants' challenges to the complaint's claims.

## Failure To Tender Indebtedness

Defendants characterize as "fatal" the complaint's failure to allege Mr. Madlaing's tender of his indebtedness given that the complaint's claims challenge foreclosure proceedings or seek damages related to the foreclosure proceedings.

Mr. Madlaing claims that he is not obligated to tender his indebtedness "because it would be inequitable to require tender" and "Defendants lacked the legal power to foreclose."

### *General Principles*

"When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure." *Alicea v. GE Money Bank*, 2009 WL 2136969, at *3 (N.D.

---

[2]     "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

Cal. 2009).

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

### Foreclosure Irregularities

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.  (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495). Simply put, if the offeror "is without the money necessary to make the

offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of

the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200

Cal.App.3d at 1165, 246 Cal.Rptr. 421.

### *TILA*

Turning to TILA, the "voiding of a security interest may be judicially conditioned on debtor's

tender of amount due under the loan." *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821

(4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded

effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the
> obligor any money or property given as earnest money, downpayment, or otherwise, and
> shall take any action necessary or appropriate to reflect the termination of any security
> interest created under the transaction. If the creditor has delivered any property to the
> obligor, the obligor may retain possession of it. Upon the performance of the creditor's
> obligations under this section, the obligor shall tender the property to the creditor, except
> that if return of the property in kind would be impracticable or inequitable, the obligor
> shall tender its reasonable value. Tender shall be made at the location of the property or
> at the residence of the obligor, at the option of the obligor. If the creditor does not take
> possession of the property within 20 days after tender by the obligor, ownership of the
> property vests in the obligor without obligation on his part to pay for it. The procedures
> prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) addresses rescission effects and provides:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor
> shall return any money or property that has been given to anyone in connection with the
> transaction and shall take any action necessary to reflect the termination of the security
> interest.

> (3) If the creditor has delivered any money or property, the consumer may retain
> possession until the creditor has met its obligation under paragraph (d)(2) of this section.
> When the creditor has complied with that paragraph, **the consumer shall tender the
> money or property to the creditor** or, where the latter would be impracticable or
> inequitable, tender its reasonable value. At the consumer's option, tender of property may
> be made at the location of the property or at the consumer's residence. Tender of money
> must be made at the creditor's designated place of business. If the creditor does not take
> possession of the money or property within 20 calendar days after the consumer's tender,
> the consumer may keep it without further obligation.  (Bold added.)

Neither TILA nor its Regulation Z, 12 C.F.R. §§ 226, et seq., "'establishes that a borrower's

mere assertion of the right of rescission has the automatic effect of voiding the contract.'" *Yamamoto

v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing

Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).  The Ninth Circuit, relying on *Large*, explained:

> Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

A rescission notice is not automatic "without regard to whether the law permits [borrower] to rescind on the grounds asserted." *See Yamamoto*, 329 F.3d at 1172. Entertaining rescission automatically "makes no sense . . . when the lender contests the ground upon which the borrower rescinds." *Yamamoto*, 329 F.3d at 1172. "In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice. Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any." *Yamamoto*, 329 F.3d at 1172 (italics in original).

Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest and return of the money within twenty days of the notice of rescission, we believe this assumes that the notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007). A "court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1173. The Ninth Circuit has explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may require borrowers to prove ability to repay loan proceeds:

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.

9

1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds given the lender's non-egregious TILA violations and equities heavily favoring the lender).[3]

Neither the complaint nor record references Mr. Madlaing's tender of indebtedness or credible ability to do so. The record's silence on Mr. Madlaing's tender of or ability to tender amounts outstanding is construed as his concession of inability to do so, especially considering his more than two years of remaining in default. Mr. Madlaing's failure to cure his default resulted in rightful acceleration of his loan's outstanding balance. Without Mr. Madlaing's meaningful tender, he seeks empty remedies, not capable of being granted. Granting Mr. Madlaing relief without his credible tender would be an unjustified windfall. Mr. Madlaing's points as to a void, as compared to voidable, sale are unavailing since he fails to demonstrate that equity excuses him from the tender rule, as explained further below in connection with his non-actionable claims.

In addition, the complaint does not address conditions precedent to permit rescission even under TILA. The complaint is not a timely, valid rescission notice but nonetheless claims Mr. Madlaing is entitled to rescind his loan and requests to enjoin defendants to claim "any estate, right or interest in the subject property." "Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest." *American Mortgage*, 486 F.3d at 820-821. Without Mr. Madlaing's meaningful tender, his purported claims are doomed.

## Standing To Challenge Loan Securitization

The complaint accuses defendants of wrongs in connection with the Pooling and Servicing Agreement ("PSA") in connection with Mr. Madlaing's loan.

Defendants note that Mr. Madlaing lacks standing to enforce PSA terms in that he is neither a

---

[3]      The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

> Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.

*Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

party to the PSA nor an intended third-party beneficiary. *See Armeni v. America's Wholesale Lender*, 2012 WL 253967, p. at *2 (C.D. Cal. 2012) ("Because Plaintiff lacks standing to raise alleged breach of the Trust Agreement [PSA], to the extent his claims are based on breach of this agreement, the claims fail."); *Bascos v. Federal Home Loan Mortg. Corp.*, 2011 WL 3157063, at *6 (C.D. Cal. 2011) ("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust."); *see also In re Correia*, 452 B.R. 319, 324 (1st Cir. BAP 2011) (where debtors asked court to declare mortgage assignment invalid based upon breach of PSA, a contract to which debtors were neither a party nor third-party beneficiaries, the court found that debtors lacked standing to object to any breaches of the PSA).

Defendants are correct that Mr. Madlaing lacks standing to assert PSA-based claims and the complaint's claims fail to the extent based on wrongs in connection with the PSA and including such claims alleged under the complaint's first and second claims. Claims that the default notice "is false" based on wrongs in connection with the PSA are unavailing. This Court construes Mr. Madlaing's failure to support PSA-based claims as his concession that he lacks standing to pursue such claims.

### Robosigning

Defendants further challenge as vague and conclusory allegations that several recorded documents were robosigned. *See Cerecedes v. U.S. Bancorp*, 2011 WL 1666938, at *4 (C.D. Cal. 2011) ("generic allegations of robo-signing and other unspecified irregularities are insufficient to place defendants on notice of how defendants violated those statutes"); *see Chua v. IB Property Holdings, LLC,* 2011 WL 3322884, at *2 (C.D. Cal. 2011) ("Plaintiffs produced no information supporting their theory that Lisa Markham [who signed assignment and trustee substitution] is a 'robo signer'").

Defendants are correct that robosigning allegations fail to support actionable claims against defendants.

### Breach Of Express Agreements

The complaint's (first) breach of express agreements claim accuses defendants of breaching the DOT.

/ / /

*Elements*

"The standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'"   *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178, 80 Cal.Rptr.3d 6 (2008).   "To form a contract, an 'offer must be sufficiently definite . . . that the performance promised is reasonably certain.'"   *Alexander v. Codemasters Group Limited*, 104 Cal.App.4th 129, 141. 127 Cal.Rptr.2d 145 (2002).   "Facts alleging a breach, like all essential elements of a breach of contract cause of action, must be pleaded with specificity." *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal.App.4th 1, 5, 58 Cal.Rptr.3d 54 (2007); *see Bentley v. Mountain*, 51 Cal.App.2d 95, 98, 124 P.2d 91 (1942) ("The allegations of the amended complaint to the effect that defendants 'violated' said contracts, or 'caused the violation' of said contracts by others, are mere conclusions of law which cannot strengthen the pleading in the absence of allegations of fact showing such violations").

Defendants challenge the complaint's failure to allege facts to support breach of contract elements based on DOT breaches.

*Foreclosure Compliance*

The complaint's (first) breach of contract claim appears to take issue with the DOT trustee's failure to record the default notice.  It specifically alleges failure "to execute a proper written notice of the occurrence of an event of default and of Lender's election to cause the property to be sold by the true Lender or Trustee."

Defendants point out that no DOT or statutory requirement requires the DOT trustee to conduct foreclosure.

Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of trust with a power of sale clause.  "Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank*, 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000). A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the applicable California Civil Code sections:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process which "is commenced by the recording of a notice of default and election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 77. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

Defendants note that LSI Title on behalf of QLS, as agent for the DOT beneficiary, executed the default notice on September 4, 2009 and that QLS properly recorded the default notice on September 9, 2009. The complaint's conclusory claims of purported breach of the DOT offer nothing to support a discrepancy in the foreclosure process. The "statutory provisions, because they broadly authorize a 'trustee, mortgagee, or beneficiary, or any of their authorized agents' to initiate a nonjudicial foreclosure (§ 2924, subd. (a)(1), italics added), do not require that the foreclosing party have an actual beneficial interest in both the promissory note and deed of trust to commence and execute a nonjudicial foreclosure sale." *Jenkins v. JP Morgan Chase Bank, N.A.*, __ Cal.Rptr.3d __, 2013 WL 2145098, at *7 (2013). Claims that the default notice "is false" are unavailing.

/ / /

13

### Compliance With California Civil Code Section 2923.5

Defendants challenge the breach of contract claim's allegations that the default notice was robosigned and that defendants failed to give proper notice prior to recording the default notice. Defendants point to the default notice's statement of compliance with California Civil Code section 2923.5 ("section 2923.5") that:

> The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

Section 2923.5(a)(1) prohibits a mortgagee, trustee, beneficiary or authorized agent to "file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g)." Section 2923.5(a)(2) requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Section 2923.5(b) requires a default notice to include a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with section 2923.5, including attempt "with due diligence to contact the borrower as required by this section."

Defendants are correct that section 2923.5 does not require actual contact if a diligent attempt to contact is made. The default notice includes the requisite declaration to attest to efforts to comply with section 2923.5. The declaration tracks with section 2923.5 to satisfy the statute. *See Mabry v. Superior Court*, 185 Cal.App.4th 208, 235, 110 Cal.Rptr.3d 201 (2010).

### Trustee Substitution

The complaint's breach of contract claim further takes issue with robosigning the trustee substitution and DOT assignment. The claim further challenges the validity of Wells Fargo's September 4, 2009 execution of the trustee substitution prior to the October 28, 2009 recordation of the DOT assignment, which transferred beneficial interest under the DOT to Wells Fargo.

Defendants note that on September 4, 2009, EMC Mortgage Corporation ("EMC"), as attorney in fact for Wells Fargo, executed the trustee substitution to substitute QLS as DOT trustee in place of original DOT trustee First American Title Company. Defendants point out that as attorney in fact for

14

the DOT beneficiary, EMC was authorized to effectuate the trustee substitution.  *See Kachlon v. Markowitz*, 168 Cal.App.4th 316, 334, 85 Cal.Rptr.3d 532 (2008) ("The beneficiary may make a substitution of trustee . . . to conduct the foreclosure and sale").

Turning to the DOT assignment, defendants explain that its recording was not required to assign the beneficial interest under the DOT.  Defendants fault a claim based on California Civil Code section 2932.5 ("section 2932.5") in that section 2932.5 applies to mortgages, not a deed of trust such as that at issue here.

California adopted the "lien" theory of mortgages and the "title" theory in reference to deeds of trust.  *Bank of Italy Nat. Trust & Sav. Ass'n v. Bentley*, 217 Cal. 644, 655, 20 P.2d 940 (1933).  Mortgages and deeds of trust "are fundamentally different in that in a mortgage only a 'lien' [is] created, while in a deed of trust 'title' actually passe[s] to the trustee."  *Bentley*, 217 Cal. at 655, 20 P.2d 940.  A "deed of trust differs from a mortgage in that title passes to the trustee in case of a deed of trust, while, in the case of a mortgage, the mortgagor retains title."  *Bentley*, 217 Cal. at 655, 20 P.2d 940.

A fellow district court has explained:

> A deed of trust generally involves three parties, the borrower/trustor . . . who conveys the right to sell the property to the trustee, for the benefit of the lender/beneficiary. . . . The practical effect is the creation of a lien on the subject property. . . . Notwithstanding that the right of sale is formally with the trustee, both the beneficiary and the trustee may commence the non-judicial foreclosure process.

*Roque v. Suntrust Mortg., Inc.*, 2010 WL 546896, at *3 (N.D. Cal. 2010) (citation omitted).

Section 2932.5 addresses mortgages and provides:

> Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

Defendants are correct that section 2932.5 covers only mortgages in which the mortgagee has a power of sale.  "Section 2932.5 applies to mortgages, not deeds of trust. It applies only to mortgages that give a power of sale to the creditor, not to deeds of trust which grant a power of sale to the trustee."  *Roque*, 2010 WL 546896, at *3.

The complaint's reliance on section 2932.5 is unavailing in that section 2932.5 does not apply to the facts subject to the complaint.  Moreover, California's non-judicial foreclosure statutes do not

15

1   require a recording of assignments of interests in deeds of trust prior to foreclosure.  *See Parcay v. Shea*

2   *Mortgage*, U.S. Dist. Lexis 40377, at *31 (E.D. Cal. 2010) ("There is no requirement under California

3   law for an assignment to be recorded in order for an assignee beneficiary to foreclose."); *Caballero v.*

4   *Bank of America*, 2010 WL 4604031, at *3 (N.D. Cal. 2010) ("§ 2932.5 does not require the recordation

5   of an assignment of a beneficial interest for a deed of trust, as opposed to a mortgage").

6           Defendants are correct that the trustee substitution and DOT assignment establish that the

7   beneficial interest in Mr. Madlaing's loan had been transferred to Wells Fargo prior to execution of the

8   trustee substitution in that the trustee substitution was executed on Wells Fargo's behalf.  In other words,

9   when Wells Fargo executed the trustee substitution, it held the beneficial interest in Mr. Madlaing's loan.

10  Delay to record the trustee substitution does not establish that Wells Fargo did not hold the loan's

11  beneficial interest when the trustee was substituted.  Under California Civil Code section 2934a(d),

12  "[o]nce recorded, the substitution [of trustee] shall constitute conclusive evidence of the authority of the

13  substituted trustee or his or her agents to act pursuant to this section."

14          The complaint lacks a viable claim based on alleged DOT breach, especially considering the

15  absence of limitation on the power of sale.  The complaint's (first) breach of express agreements claim

16  is subject to dismissal.

17                              **Breach Of Implied Agreements**

18          The complaint's (second) breach of implied agreements claim alleges defendants invoked the

19  DOT's power of sale without notice required by the DOT.

20          "An implied contract is one, the existence and terms of which are manifested by conduct." Cal.

21  Civ. Code, § 1621.  Like an express contract, an implied contract requires "a meeting of the minds or

22  an agreement." *Mulder v. Mendo Wood Products, Inc.*, 225 Cal.App.2d 619, 632, 37 Cal.Rptr. 479

23  (1964).  "As to the basic elements, there is no difference between an express and implied contract.

24  While an express contract is defined as one, the terms of which are stated in words (Civ. Code, § 1620),

25  an implied contract is an agreement, the existence and terms of which are manifested by conduct (Civ.

26  Code, § 1621)." *Division of Labor Law Enforcement v. Transpacific Transportation Co.*, 69 Cal.App.3d

27  268, 275, 137 Cal.Rptr. 855 (1977).  "The true implied contract consists of obligations arising from a

28  mutual agreement and intent to promise where the agreement and promise have not been expressed in

16

1   words." *Mulder*, 225 Cal.App.2d at 632, 37 Cal.Rptr. 479.

2        The breach of implied agreements claim is based on the same allegations as the breach of express

3   agreements claim.  Despite the slightly different theory, the breach of implied agreements claim fails for

4   the same reasons as the breach of express agreements claim.  As discussed above, no actionable claims

5   arise from the default notice or trustee substitution, including their contents or authority to enforce or

6   record them.  The breach of implied agreements claim fails along side the breach of express agreements

7   claim.

8                              **Slander Of Title**

9        The complaint's (third) slander of title further takes issue with validity of foreclosure documents.

10  Defendants fault the complaint's absence of facts to support slander of title.

11                                *Elements*

12       "Slander of title occurs when there is an unprivileged publication of a false statement which

13  disparages title to property and causes pecuniary loss."  *Stalberg v. Western Title Ins. Co.*, 27

14  Cal.App.4th 925, 929, 32 Cal.Rptr.2d 750 (1994).  The elements of slander of title are: (1) publication;

15  (2) falsity; (3) absence of privilege; and (4) disparagement of another's land which is relied upon by a

16  third party and which results in a pecuniary loss.  *Appel v. Burman*, 159 Cal.App.3d 1209, 1214, 206

17  Cal.Rptr. 259 (1984).

18                                *Privilege*

19       Defendants note that the complaint's slander of title allegations address foreclosure documents,

20  which are privileged communications.  California Civil Code section 2924(d) ("section 2925(d)")

21  renders as California Civil Code section 47 "privileged communications" the "mailing, publication, and

22  delivery" of foreclosure notices and "performance" of foreclosure procedures.  "[W]e conclude that the

23  protection granted to nonjudicial foreclosure . . . is the qualified common interest privilege of section

24  47, subdivision (c)(1)."  *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 341, 85 Cal.Rptr.3d 532 (2008);

25  *see Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1018 (N.D. Cal. 2009) (conduct is

26  "protected by the qualified privilege of § 47(c) so long as . . . not malicious"); *see also Hagberg v.*

27  *California Federal Bank FSB*, 32 Cal.4th 350, 361 81 P.3d 244 (2004) ("As noted, the only tort claim

28  we have identified as falling outside the privilege established by section 47(b) is malicious

                                       17

prosecution"). Defendants conclude that the slander of title claim fails in the absence of facts to support defendants' malice.

Malice is defined as actual malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Sanborn v. Chronicle Pub. Co.,* 18 Cal.3d 406, 413, 134 Cal.Rptr. 402 (1976).

Mr. Madlaing accuses defendants of malice by recording foreclosure documents "while aware that they could not be the true beneficial interest holder" in the DOT and "in reckless disregard of the facts underlying this foreclosure process."

Mr. Madlaing offers nothing to challenge the privileged nature of defendants' alleged wrongs or to support that defendants acted with requisite malice. As demonstrated above, defendants recorded valid foreclosure documents with proper authority. Mr. Madlaing proffers no facts that defendants acted with hatred or ill will toward him. Defendants are entitled to invoke the section 2924(d) privilege to defeat the slander of title claim.

Defendants continue that despite the lack of facts to support malice, the complaint fails to allege facts that defendants published false information in that the default notice and trustee substitution were recorded with proper authority, defendants complied with section 2923.5, and robosigning claims lack merit.

### *MERS' Authority*

Defendants further challenge claims that MERS did not own a beneficial interest in the DOT and thus could not assign the beneficial interest to Wells Fargo. However, the DOT provides: "MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." The DOT continues: "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . ." Defendants point out that based on Mr. Madlaing's DOT agreement that MERS was a nominee beneficiary, the complaint acknowledges MERS authority. *See Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1190 (N.D. Cal. 2009) ("Since Plaintiff granted MERS the right to foreclose in his contract, his

1    argument that MERS cannot initiate foreclosure proceedings is meritless").

2         Defendants further challenge the complaint's claims that MERS lacked authority to execute the

3    DOT assignment in that original lender PFG "was no longer allowed to conduct business."  Defendants

4    point to conclusory, unsupported allegations as to PFG's status and that the DOT provides MERS with

5    authority "as a nominee for Lender and Lender's successors and assigns" to authorize MERS to execute

6    the DOT assignment.

7         Mr. Madlaing fails to support with law and facts that "false documents were recorded, thus

8    disparaging Plaintiff's title."  A quiet title claim requires an allegation that the plaintiffs "are the rightful

9    owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *See*

10   *Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009).

11   Mr. Madlaing is unable to allege that he is the property's rightful owner and satisfied DOT obligations.

12   The quiet title claim fails and is subject to dismissal.  As such, this Court need not address Mr.

13   Madlaing's claim of alleged damages of "attorney fees and costs necessary to clear title."

14                                   **Wrongful Foreclosure**

15        The complaint's (fourth) wrongful foreclosure claim continues to challenge foreclosure based

16   on purported invalidity of foreclosure documents.  The wrongful foreclosure claim seeks a declaration

17   that defendants "lack any valid interest in the Deed of Trust and thus lack the authority to complete this

18   foreclosure."  Mr. Madlaing claims that the foreclosure "is illegal" because defendants "were not the true

19   beneficiary or trustee and thus lacked the power of sale."  Defendants challenge the wrongful foreclosure

20   claim as legally barred and lacking sufficient facts and characterize the claim as an impermissible

21   "preemptive challenge to Defendant's standing to foreclose."

22                                   *Absence Of Prejudice*

23        A "plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the

24   alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests." *Herrera v.*

25   *Federal Nat. Mortg. Assn.*, 205 Cal.App.4th 1495, 1507, 141 Cal.Rptr.3d 326 (2012); *see Knapp v.*

26   *Doherty*, 123 Cal.App.4th 76, 86, n. 4, 20 Cal.Rptr.3d 1 ("A nonjudicial foreclosure sale is presumed

27   to have been conducted regularly and fairly; one attacking the sale must overcome this common law

28   presumption 'by pleading and proving an improper procedure and the resulting prejudice '").  "Prejudice

                                          19

is not presumed from 'mere irregularities' in the process." *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272, 129 Cal.Rptr.3d 467 (2011).

Defendants note the complaint's absence of facts of Mr. Madlaing's payments to defendants and damages resulting from "anything other than his own default." Mr. Madlaing offers nothing to support his purported prejudice resulting from foreclosure. He merely challenges the handling of foreclosure documents to claim that foreclosure was inequitable and void.

### *Absence Of Standing*

Defendants challenge Mr. Madlaing's standing to seek declaratory relief as to defendants' authority to foreclose given "the exhaustive nature of California's non-judicial foreclosure scheme."

Defendants are correct that foreclosure remedies are limited under California's statutory scheme:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Defendants construe the complaint's attempt at declaratory relief as prohibited interjection into the comprehensive non-judicial foreclosure scheme. *See Robinson v. Countrywide Home Loans, Inc.*, 199 Cal.App.4th 42, 46, 130 Cal.Rptr.3d 811 (2011) ("the statutory scheme (§§ 2924–2924k) does not provide for a preemptive suit challenging standing. Consequently, plaintiffs' claims for damages for wrongful initiation of foreclosure and for declaratory relief based on plaintiffs' interpretation of section 2924, subdivision (a), do not state a cause of action as a matter of law"). Defendants further attack claims as to authority to execute foreclosure documents and robosigning given defendants' compliance with the non-judicial foreclosure scheme.

Mr. Madlaing fails to address defendants' points as to his lack of standing to seek declaratory relief. This Court construes such failure as his concession that he lacks standing to seek declaratory relief, a claim which is subject to dismissal along with the remainder of the wrongful foreclosure claim.

/ / /

20

### Section 2923.5 Violation

The complaint's (fifth) claim purports to allege a section 2923.5 violation in that defendants "failed to exercise due diligence in attempting to contact Plaintiffs [sic] as required by Section 2923.5; and in fact Plaintiff were [sic] never contacted."

Defendants fault the complaint's absence of allegations that the property was owner occupied to invoke section 2923.5 application. Section 2923.5 applies "only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units. For these purposes, 'owner-occupied' means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes." Cal. Civ. Code, § 2924.15(a).

Defendants further note that the default notice contradicts a purported section 2923.5 violation. Defendants note the absence of facts that defendants failed to attempt with due diligence to contact Mr. Madlaing. Section 2923.5 "requires only contacts or attempted contacts in a good faith effort to prevent foreclosure." *Ortiz v. Accredited Home Lenders, Inc.*, 639 F.Supp.2d 1159, 1166 (S.D. Cal. 2009).

Mr. Madlaing is silent that the property was owner occupied. This Court construes such silence as Mr. Madlaing's concession that he did not satisfy the owner-occupied requirement. In addition, Mr. Madlaing offers nothing meaningful to challenge failure to satisfy section 2923.5. Claims based on section 2923.5 are subject to dismissal.

### RESPA

The complaint's (sixth) RESPA claim is premised on defendants' alleged failure to respond properly to a Qualified Written Request ("QWR").

#### *Absence Of A Qualified Written Request*

Under RESPA, a QWR is a "written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). Among other things, a QWR must include information to identify the borrower's name and account and a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).

1   Defendants point to the absence of allegations to support that Mr. Madlaing sent a legitimate

2   QWR and to identify grounds that Mr. Madlaing's loan or account was defective or in error.  Defendants

3   are correct.  The complaint's conclusory allegations as to a QWR are insufficient.  *See Lemperle v.*

4   *Washington Mut. Bank,* 2011 WL 197590, at *2 (S.D. Cal. 2011) (dismissing as factually insufficient

5   a RESPA claim which offered "no factual basis for his claim, merely reciting the elements of the cause

6   of action and the general required content of a QWR"); *Lopez v. U.S. Bank Nat. Ass'n,* 2010 WL

7   3463622, at *2 (S.D. Cal. 2010) (plaintiff "does not allege when she sent the QWR, to whom, or what

8   she asked for, and for these reasons fails to state a claim under RESPA"); *Walker v. Equity 1 Lenders*

9   *Group*, 2009 WL 1364430, at *5 (S.D. Cal. 2009) ("The Complaint does not otherwise allege facts to

10   support that Plaintiff sent Aurora a qualified written request").

11   The complaint merely alleges that plaintiff submitted a QWR "pursuant to RESPA procedures"

12   and that defendants failed "to properly respond to Plaintiff's QWR and no response has been received

13   to date."  The complaint lacks necessary supporting facts of a sufficient or credible QWR in the absence

14   of allegations of when Mr. Madlaing sent the QWR, to whom, or what he asked for.

15   ***Limitations Defense***

16   A RESPA claim is further susceptible to 12 U.S.C. § 2614's one-year limitations for violations

17   of 12 U.S.C. § 2607.[4]  "The statute of limitations for private plaintiffs suing under RESPA is one year

18   from the 'date of the occurrence of the violation.'"  *Edwards v. First American Corp.*, 517 F.Supp.2d

19   1199, 1204 (C.D. Cal. 2007) (quoting 12 U.S.C. § 2614).  The "primary ill" which RESPA seeks to

20   remedy is "the potential for 'unnecessarily high settlement charges' caused by kickbacks, fee-splitting,

21   and other practices that suppress price competition for settlement services.  This ill occurs, if at all, when

22   the plaintiff pays for the service, typically at the closing."  *Snow v. First American Title Ins. Co.*, 332

23   F.3d 356, 359-360 (5th Cir. 2003) (quoting 12 U.S.C. §2601(a)).  Mr. Madlaing closed his loan in

24   September 2006, well more than a year prior to the complaint's December 21, 2012 filing to bar RESPA

25   claims in connection with loan origination.

26   / / /

27   _____

28   [4]   12 U.S.C. § 2607(a) prohibits referral payments for real estate settlement services, and 12 U.S.C. § 2607(b) prohibits receipt of "any portion, split or percentage" of a settlement service fee, except for performed services.

1                                             ***Absence Of Private Right Of Action***

2      A RESPA claim is further subject to dismissal in absence of a private right of action under

3 RESPA for disclosure violations.

4      RESPA's purpose is to "curb abusive settlement practices in the real estate industry.  Such

5 amorphous goals, however, do not translate into a legislative intent to create a private right of action."

6 *Bloom v. Martin*, 865 F.Supp. 1377, 1385 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (1996).  "The structure

7 of RESPA's various statutory provisions indicates that Congress did not intend to create a private right

8 of action for disclosure violations under 12 U.S.C. § 2603 . . . Congress did not intend to provide a

9 private remedy . . ."  *Bloom*, 865 F.Supp. at 1384.

10      The absence of a private right of action dooms a purported RESPA claim based on disclosure

11 violations.

12      Lastly, in his opposition papers but not his complaint, Mr. Madlaing attempts to base a RESPA

13 claim on failure to determine "the legality of lender payments to mortgage brokers for table funded

14 transactions and intermediary transactions under RESPA" and to disclose "a financial benefit while

15 Plaintiff(s) suffer financially as a result of the loan product."  "In determining the propriety of a Rule

16 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as

17 a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't. of Corr.*, 151

18 F.3d 1194, 1197, n. 1 (9th Cir.1998).  As such, the newly-raised RESPA assertion fails to avoid

19 dismissal of the RESPA claim, which fails as insufficiently pled and as a matter of law.

20                                                          **TILA**

21      The complaint's eighth claim alleges that defendant violated TILA "by failing to provide Plaintiff

22 with accurate material disclosures under TILA."  Mr. Madlaing accuses defendants of failure "to fully

23 inform home buyers of the pros and cons of adjustable rate mortgages in language (both written and

24 spoken) that they can understand."

25                                        ***Damages Limitations Period***

26      Defendants contend that a TILA damages claim is time barred by the one-year limitations period

27 running from signing of loan documents.

28      A TILA damages claim is subject to 15 U.S.C.  § 1640(e), which provides that an action for a

TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d 1176, 1183 (D. Or. 2005). The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). The Ninth Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.

Mr. Madlaing's loan was finalized with the DOT effective date of September 11, 2006, which was more than a year prior to the December 21, 2012 filing of this action. TILA damages claims are doomed.

### *Rescission Limitations Period*

To the extent that the complaint pursues a TILA rescission claim, it too is time barred.

TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a). TILA rescission may be extended up to three years if the lender fails to comply with TILA disclosure requirements. *Semar*, 791 F.2d at 701-702; 15 U.S.C. § 1635(f).

15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

> An obligor's right of rescission **shall expire three years after the date of consummation of the transaction** or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . (Bold added.)

The U.S. Supreme Court has described as "manifest" Congress' intent to prohibit rescission after the three-year period has run:

> Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right

1  of rescission [under the Act] shall expire" at the end of the time period. It talks not of a
2  suit's commencement but of a right's duration, which it addresses in terms so
   straightforward as to render any limitation on the time for seeking a remedy superfluous.
3  There is no reason, then, even to resort to the canons of construction that we use to
   resolve doubtful cases, such as the rule that the creation of a right in the same statute that
4  provides a limitation is some evidence that the right was meant to be limited, not just the
   remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*,
   at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692,
5  693-694, 48 L.Ed. 1067 (1904).

6  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998); *Miguel v. Country Funding*

7  *Corp.,* 309 F.3d 1161, 1164 (9th Cir. 2002) ("§ 1635(f) is a statute of repose, depriving the courts of

8  subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period").

9      With Mr. Madlaing's loan consummated in September 2006, a TILA rescission remedy expired

10  prior to the December 21, 2012 filing of the complaint.  TILA rescission is time barred.

11                          ***Equitable Tolling/Delayed Discovery***

12      Mr. Madlaing claims that limitations periods "were tolled due to Defendants' failure to

13  effectively provide required disclosures and notices."  Defendants argue that the complaint lacks

14  allegations to establish an equitable exception to the limitations periods.

15      "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital

16  information bearing on the existence of his claim."  *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178

17  (9th Cir. 2000).  The Ninth Circuit has explained:

18      Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by
        the defendant to prevent the plaintiff from suing.  Instead it focuses on whether there was
19      excusable delay by the plaintiff.  If a reasonable plaintiff would not have known of the
        existence of a possible claim within the limitations period, then equitable tolling will
20      serve to extend the statute of limitations for filing until the plaintiff can gather what
        information he needs. . . . However, equitable tolling does not postpone the statute of
21      limitations until the existence of a claim is a virtual certainty.

22  *Santa Maria*, 202 F.3d at 1178 (citation omitted).

23      Courts are reluctant to invoke equitable tolling:

24          A statute of limitations is subject to the doctrine of equitable tolling; therefore,
        relief from strict construction of a statute of limitations is readily available in **extreme**
25      **cases** and gives the court latitude in a case-by-case analysis. . . . The equitable tolling
        doctrine has been applied by the Supreme Court in certain circumstances, but it has been
26      applied sparingly; for example, the Supreme Court has allowed equitable tolling when
        the statute of limitations was not complied with because of defective pleadings, when a
27      claimant was tricked by an adversary into letting a deadline expire . . . Courts have been
        generally unforgiving, however, when a late filing is due to claimant's failure "to exercise
28      due diligence in preserving his legal rights." . . .

                                          25

1    *Scholar v. Pac. Bell*, 963 F.2d 264, 267-268 (9th Cir. 1992) (bold added; citations omitted).

2          The "mere existence of TILA violations and lack of disclosure does not itself equitably toll the

3    statute of limitations. This is sensible, because it is in line with the generally applicable principles of

4    equitable tolling, and because a contrary rule would render the one-year statute of limitations

5    meaningless, as it would be tolled whenever there were improper disclosures." *Garcia v. Wachovia*

6    *Mortg. Corp.*, 676 F.Supp.2d 895, 906 (C.D. Cal. 2009).   "Where the basis of equitable tolling is

7    fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil

8    Procedure." *Marzan v. Bank of America*, 779 F.Supp.2d 1140, 1149 (D. Haw. 2011) (citing *389 Orange*

9    *St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir.1999)).

10         Under the discovery rule, "the limitations period does not accrue until the aggrieved party has

11   notice of the facts constituting the injury." *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal.App.4th

12   1308, 1318, 64 Cal.Rptr.3d 9 (2007).   "The 'discovery rule' . . . assumes that the elements of accrual

13   including harm exist, but tolls the ruling of the statute until the plaintiff is on inquiry notice of its injury

14   (and its wrongful cause)." *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995).

15   To rely on delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face that his claim

16   would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the

17   time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable

18   diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808, 27 Cal.Rptr.3d 661 (2005) (quoting

19   *McKelvey v. Boeing North American, Inc.,* 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645 (1999)).

20         To satisfy the time and manner of discovery requirement, a plaintiff must allege "facts showing

21   the time and surrounding circumstances of the discovery of the cause of action upon which they rely."

22   *Bennett v. Hibernia Bank*, 47 Cal.2d 540, 563, 305 P.2d 20 (1956).   "The purpose of this requirement

23   is to afford the court a means of determining whether or not the discovery of the asserted invasion was

24   made within the time alleged, that is, whether plaintiffs actually learned something they did not know

25   before." *Bennett*, 47 Cal.2d at 563, 305 P.2d 20.

26         Moreover, "to adequately allege facts supporting a theory of delayed discovery, the plaintiff must

27   plead that, despite diligent investigation of the circumstances of the injury, he or she could not have

28   reasonably discovered facts supporting the cause of action within the applicable statute of limitations

26

period." *Fox*, 35 Cal.4th at 809, 27 Cal.Rptr.2d 661.  The doctrine of delayed discovery requires a plaintiff to plead facts showing an excuse for late discovery of the facts underlying his cause of action. *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236, 1247, 78 Cal.Rptr.2d 566 (1998).  The plaintiff  must show that it was not at fault for failing to discover or had no actual or presumptive knowledge of facts sufficient to put it on inquiry.  *Prudential Home*, 66 Cal.App.4th at 1247, 78 Cal.Rptr.2d 566.  As to sufficiency of delayed discovery allegations, a plaintiff bears the burden to "show diligence" and "conclusory allegations" will not withstand dismissal.  *Fox*, 35 Cal.4th 797, 808, 27 Cal.Rptr.2d 661.

The complaint lacks necessary allegations for equitable tolling or delayed discovery.  The complaint references vague TILA discrepancies and makes sweeping references to Mr. Madlaing's right to rescind his loan. The complaint lacks allegations that Mr. Madlaing was prevented to compare what documents he received to the TILA disclosure requirements. *See Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (no evidence suggested that lender concealed its alleged breach).  Nothing suggests that Mr. Madlaing lacked information relevant to discovery of a TILA violation when Mr. Madlaing's loan was consummated in that alleged violations would have been apparent when loan documents were finalized. The complaint offers nothing to demonstrate that despite Mr. Madlaing's due diligence, he was unable to obtain information of a TILA violation.  Mr. Madlaing is silent as to his purported due diligence.  Moreover, the limitations period for TILA rescission is a statute of repose not subject to equitable tolling or delayed discovery.  TILA claims are time barred.

### Absence Of TILA Violation

Defendants further challenge TILA claims in the absence of facts to detail Mr. Madlaing's loan and inadequate disclosures.

A complaint's failure to allege how defendants violated various cited TILA statutes and regulations is subject to dismissal in that it does not "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Marks v. Chicoine*, 2007 WL 160992, at *7 (N.D. Cal. 2007).  The complaint lacks facts to support specific, identifiable TILA violations.  The complaint lacks details of Mr. Madlaing's loan and withheld material disclosures.  Failure to identify TILA violations further warrants dismissal of TILA claims.

1

**RICO**

2       The complaint's eighth claim accuses defendants of violating RICO by concealing "the fact that

3   the Loans were securitized as well as terms of Securitization Agreements."

4       Defendants challenge the absence of specific facts to support RICO claims. Mr. Madlaing fails

5   to support the complaint's RICO claim.

6       Subsection (c) of 18 U.S.C. § 1962 ("section 1962") provides:

7       (c) It shall be unlawful for any person employed by or associated with any enterprise
        engaged in, or the activities of which affect, interstate or foreign commerce, to conduct
8       or participate, directly or indirectly, in the conduct of such enterprise's affairs through a
        pattern of racketeering activity or collection of unlawful debt.

9

10                          *Elements*

11      A violation of § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of

12  racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim."

13  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985).  A "plaintiff only has standing

14  if, and can only recover to the extent that, he has been injured in his business or property by the conduct

15  constituting the violation."  *Sedima*, 473 U.S. at 496, 105 S.Ct. 3275.

16                          *Enterprise*

17      Section 1962(c) requires "that the person named as the defendant cannot also be the entity

18  identified as the enterprise."  *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 995 (8th Cir.

19  1989).  For a RICO claim, an alleged "enterprise" requires an independent legal entity such as a

20  corporation or an "association in fact" of individuals.  18 U.S.C. § 1961(4).  The U.S. Supreme Court

21  has explained:

22      The enterprise is an entity, for present purposes a group of persons associated together
        for a common purpose of engaging in a course of conduct. The pattern of racketeering
23      activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C.
        § 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing
24      organization, formal or informal, and by evidence that the various associates function as
        a continuing unit. The latter is proved by evidence of the requisite number of acts of
25      racketeering committed by the participants in the enterprise. While the proof used to
        establish these separate elements may in particular cases coalesce, proof of one does not
26      necessarily establish the other. The "enterprise" is not the "pattern of racketeering
        activity"; it is an entity separate and apart from the pattern of activity in which it engages.

27

28  *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981).

1   Although defendants have been involved with Mr. Madlaing's loan and property foreclosure, the

2   complaint lacks sufficient allegations of an ongoing organization that functions as a unit.  The complaint

3   fails to allege how defendants or others constitute a RICO enterprise.

4   ***Pattern Of Racketeering Activity***

5   "Racketeering activity" is any act indictable under several provisions of Title 18 of the United

6   States Code. *Rothman v. Vetter Park Management*, 912 F.2d 315, 316 (9th Cir. 1990); *see* 18 U.S.C. §

7   1961. "Racketeering activity" also includes "any act or threat involving murder, kidnapping, gambling,

8   arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or

9   listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under

10  State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).

11  Subsection (5) of 18 U.S.C. § 1961("section 1961") defines "pattern of racketeering activity" to

12  require "at least two acts of racketeering activity, one of which occurred after the effective date of this

13  chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the

14  commission of a prior act of racketeering activity."  Section 1961"does not so much define a pattern of

15  racketeering activity as state a minimum necessary condition for the existence of such a pattern." *H.J.,*

16  *Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893 (1989). Section 1961(5) "says

17  of the phrase 'pattern of racketeering activity' only that it 'requires at least two acts of racketeering

18  activity, one of which occurred after [October 15, 1970,] and the last of which occurred within ten years

19  (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.' It

20  thus places an outer limit on the concept of a pattern of racketeering activity that is broad indeed." *H.J.,*

21  *Inc.*, 492 U.S. at 237, 109 S.Ct. 2893.

22  "Section 1961(5) concerns only the minimum *number* of predicates necessary to establish a

23  pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate

24  acts involved." *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900 (italics in original).  A pattern is not

25  formed by "sporadic activity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900.  The term pattern requires

26  a relationship between predicates and the threat of continuing activity. *H.J., Inc.*, 492 U.S. at 238, 109

27  S.Ct. at 2900.  The factor of continuity plus relationship combines to produce a pattern. *H.J., Inc.*, 492

28  U.S. at 239, 109 S.Ct. at 2900.  "RICO's legislative history reveals Congress' intent that to prove a

pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900.

Defendants are correct that the complaint lacks facts to establish a pattern of racketeering activities, especially given the absence of a factual basis for state or federal crimes to constitute the necessary predicate acts within the definition of racketeering activity. The complaint lacks sufficient allegations that defendants or others engaged in an enterprise or two or more criminal acts to support a pattern of racketeering activity under sections 1961(5) and 1962. The complaint fails to allege that Mr. Madlaing's loan constitutes an unlawful debt, that is, an illegal gambling debt or debt with an interest rate "at least twice the enforceable rate." *Reidy v. Meritor Sav., F.S.B.,* 705 F.Supp. 39, 40 (D. D.C. 1989). The complaint fails to identify conduct to constitute or reflect mail fraud.

### *Damages*

The complaint further fails to satisfy the damages requirement for a RICO claim. The "plain language" of pertinent RICO provisions "leads us to conclude that a plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.,* 981 F.2d 429, 437 (9th Cir. 1992), *cert. denied*, 508 U.S. 908, 113 S.Ct. 2336 (1993).

The RICO claim is vitiated by the absence of sufficient facts of an enterprise, racketeering activity, pattern of racketeering activity, unlawful debt and recoverable damages. The complaint alleges no injury to Mr. Madlaing's business or property by a racketeering activity or sufficiently alleged violation identified under RICO. The complaint is devoid of facts to satisfy sections 1961 and 1962. The complaint lacks meaningful support for the civil RICO claim, and Mr. Madlaing appears to concede as much.

### *Pleading Specificity*

Defendants challenge the complaint's failure to satisfy F.R.Civ.P. 9(b) pleading requirements given the complaint's "conclusory allegation that securitization of loans is illegal and violates RICO."

The Ninth Circuit applies F.R.Civ.P. 9(b) particularity requirements to RICO claims under section 1962. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Alan Neuman*

1 | *Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93  (9th Cir. 1988) ("The allegations of predicate acts in

2 | the complaint concerning those elements of RICO are entirely general; no specifics of time, place, or

3 | nature of the alleged communications are pleaded. This is a fatal defect under Fed.R.Civ.P. 9(b), which

4 | requires that circumstances constituting fraud be stated with particularity");  *Schreiber Distrib. Co. v.*

5 | *Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986) ("We have interpreted Rule 9(b) to mean

6 | that the pleader must state the time, place, and specific content of the false representations as well as the

7 | identities of the parties to the misrepresentation.")

8 | "The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect

9 | on those named as defendants. In fairness to innocent parties, courts should strive to flush out frivolous

10 | RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1[st]

11 | Cir. 1990).

12 | "The particularity requirements of Rule 9(b) apply to allegations of mail fraud, 18 U.S.C. §

13 | 1341, and wire fraud, 18 U.S.C. § 1343, when used as predicate acts for a RICO claim." *Murr*

14 | *Plumbing, Inc. v. Scherer Bros. Financial Services Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995).

15 | As discussed above, the absence of facts to support RICO elements illustrates the complaint's

16 | failure to satisfy F.R.Civ.P. 9(b) to further warrant dismissal of the RICO claim.

17 | **Unlawful Business Practices**

18 | The complaint's (ninth) UCL claim alleges that defendants engaged in UCL-prohibited practices

19 | by executing and recording the false DOT assignment.

20 | Defendants fault the complaint's failure to allege sufficient facts to establish a UCL violation and

21 | the UCL claim's failure to derive liability with demise of the complaint's other claims.  Mr. Madlaing

22 | attempts to manufacture a UCL claim with his repeated notion that "Defendants lack the power of sale."

23 | "Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and

24 | unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr.

25 | 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).  The UCL establishes three varieties of unfair

26 | competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group,*

27 | *Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000).

28 | "A plaintiff alleging unfair business practices under these statutes [UCL] must state with

1  reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's*

2  *of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

3      The complaint's (ninth) UCL claim is predicated on an unlawful business practice arising from

4  the complaint's other claims.  The UCL claim notes that ability to pursue it "depends on the success or

5  failure of their [sic] other substantive causes of action."  Defendants contend that the UCL claim fails

6  with the complaint's other claims.

7      An "unlawful business activity" includes anything that can properly be called a business practice

8  and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People*

9  *v. McKale,* 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)).  "A business practice is

10  'unlawful' if it is 'forbidden by law.'"  *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158,

11  1169, 121 Cal.Rptr.2d 79 (2002) (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383,

12  6 Cal.Rptr.2d 487 (1992)).

13      The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state,

14  or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832,

15  838, 33 Cal.Rptr.2d 548 (1999).  The UCL "thus creates an independent action when a business practice

16  violates some other law."  *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79.  According to the

17  California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful

18  practices independently actionable under the UCL.  *Farmers Ins.,* 2 Cal.4th at 383, 6 Cal.Rptr.2d 487.

19      A fellow district court has explained the borrowing of a violation of law other than the UCL:

20          To state a claim for an "unlawful" business practice under the UCL, a plaintiff
    must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles*
21   *Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999)
    (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows'
22   violations of other law and treats them as unlawful practices that the unfair competition
    law makes independently actionable.") (citation omitted). Where a plaintiff cannot state
23   a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith*
    *v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d
24   399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her
    TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA
25   has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

26  *Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

27      As demonstrated above, the complaint lacks actionable claims and in turn lacks a viable UCL

28  claim to warrant its dismissal.

***Standing***

Defendants further challenge Mr. Madlaing's standing to pursue UCL relief in the absence of allegation of his economic injury and completion of the trustee's sale.

California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition."  "This provision requires [plaintiff] to show that she has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959-60 (9th Cir.2009), and also requires a 'causal connection' between [defendant's] alleged UCL violation and her injury in fact, *Hall v. Time Inc.*, 158 Cal.App.4th 847, 70 Cal.Rptr.3d 466, 471-72 (2008)." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-1205 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 1817 (2011).

Business and Professions Code section 17203 addresses UCL relief and provides in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

"In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's remedies are 'generally limited to injunctive relief and restitution.'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).  "The UCL limits the remedies available for UCL violations to restitution and injunctive relief . . ."  *Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440, 452, 30 Cal.Rptr.3d 210 (2005).

The complaint lacks facts of Mr. Madlaing's money or property allegedly lost in that he was obligated to pay his loan and faced foreclosure if he failed to meet his obligations.  In addition, the complaint lacks facts to support Mr. Madlaing is entitled to restitution.  The "notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled and the victim must have given up something which he or she was entitled to keep." *Day v. AT & T Corp.*, 63 Cal.App.4th 325, 340, 74 Cal.Rptr.2d

55 (1998). Mr. Madlaing's loan payments fail to satisfy restitution elements in that he was obligated to make such payments. The complaint lacks facts, and Mr. Madlaing points to none, to support an unlawful business claim and Mr. Burton's standing to seek UCL relief to warrant dismissal of the UCL claim.

**Attempt At Amendment And Malice**

Since the complaint lacks viable claims, Mr. Madlaing is unable to cure claims by allegation of other facts and thus is not granted an attempt to amend. Mr. Madlaing's complaint and opposition papers raise frivolous points, all of which this Court need not address individually. *See Crain v. Commissioner*, 737 F.2d 1417, 1417 (5th Cir. 1984) ("We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit.")

Moreover, this Court surmises that Mr. Madlaing brought this action in absence of good faith and seeks to exploit the court system solely for delay or to vex defendants and the foreclosure and/or unlawful detainer process. This point is bolstered by Mr. Madlaing's dismissal of his state court action. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). The complaint includes invalid claims. An attempt to vex or delay provides further grounds to dismiss this action.

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1.    DISMISSES with prejudice this action and all claims against defendants;

2.    DIRECTS the clerk to enter judgment in favor of defendants JPMorgan Chase Bank, N.A., Wells Fargo Bank, N.A., and Mortgage Electronic Registration Systems, Inc. and against plaintiff Art G. Madlaing in that there is no just reason to delay to enter such

34

judgment given that Mr. Madlaing's claims against these defendants and their alleged liability are clear and distinct from claims against and liability of other defendant(s). *See* F.R.Civ.P. 54(b); and

3.      ORDERS Mr. Madlaing, no later than June 12, 2013, to file papers to show cause why this Court should not dismiss this action against any remaining defendants, including Quality Loan Services Corp.

**This Court ADMONISHES Mr. Madlaing that this Court will dismiss this action against any remaining defendants, including Quality Loan Services Corp., if Mr. Madlaing fails to comply with this order and fails to file timely papers to show cause why this Court should not dismiss this action against any remaining defendants.  This Court further ADMONISHES Mr. Madlaing's counsel of potential liability under 28 U.S.C. § 1927, F.R.Civ.P. 11, and other authorities.**

IT IS SO ORDERED.

**Dated:     May 31, 2013              /s/  Lawrence J. O'Neill**
                              UNITED STATES DISTRICT JUDGE